J-A26008-19

2020 PA Super 26

| | | |
|---|---|---|
| JEFFREY R. WENK AND LEE ANN WENK A/K/A LEE ANN MADDEN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY COMPANY AND H.J.M. ENTERPRISES, INC. TDBA FIREDEX OF PITTSBURGH | : | No. 1284 WDA 2018 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: STATE FARM FIRE AND CASUALTY | : | |

Appeal from the Judgment Entered July 25, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD 08-018845

| | | |
|---|---|---|
| JEFFREY R. WENK AND LEE ANN WENK A/K/A LEE ANN MADDEN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1287 WDA 2018 |
| STATE FARM FIRE AND CASUALTY COMPANY AND H.J.M. ENTERPRISES, INC. TDBA FIREDEX OF PITTSBURGH | : | |

Appeal from the Judgment Entered July 25, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 08-018845

| | | |
|---|---|---|
| JEFFREY R. WENK AND LEE ANN WENK A/K/A LEE ANN MADDEN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |

STATE FARM FIRE AND CASUALTY : 
COMPANY AND H.J.M. ENTERPRISES, :   No. 1288 WDA 2018
INC. TDBA FIREDEX OF PITTSBURGH : 
                                 : 
                                   : 
APPEAL OF:  H.J.M. ENTERPRISES, : 
INC. TDBA FIREDEX OF PITTSBURGH : 

Appeal from the Judgment Entered July 25, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD-08-018845


BEFORE:  SHOGAN, J., LAZARUS, J., and OLSON, J.

OPINION BY SHOGAN, J.:                           **FILED FEBRUARY 7, 2020**

Jeffrey and Lee Ann Wenk ("the Wenks" or "Appellants"),[1] who are Allegheny County homeowners in Upper St. Clair Township in Allegheny County, appeal from the judgment entered in this case on July 25, 2018, following a bench trial. State Farm Fire and Casualty Company ("State Farm" or "Appellee") and H.J.M. Enterprises, Inc. tdba FireDEX of Pittsburgh ("FireDEX" or "Appellee") filed cross appeals. We affirm in part and vacate and remand in part.

The Wenks filed a complaint against State Farm and FireDEX asserting claims of bad faith against State Farm and the following claims against both State Farm and FireDEX:  breach of contract; breach of warranty; violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law

_____

[1] The Wenks are the designated Appellants in this consolidated appeal. Order, 12/27/18.

("UTPCPL"), 73 P.S. §§ 201-1, *et seq*.; and intentional infliction of emotional distress.

In a Memorandum Opinion accompanying the verdict, the trial court summarized the facts of the case as follows:

> The Plaintiffs, (hereinafter "the Wenks") are homeowners in Allegheny County. The Wenks hired a contractor[2] to perform remodeling on their home. In the process, the contractor, in an attempt to destroy a bee's nest, poured gasoline within the framework of the Wenks' home,[3] thereby contaminating the wood structure in a corner of the house. The Wenks contacted their homeowner's insurer, State Farm, to submit a claim and request assistance in repairing the damage. Following consultation with State Farm, the Wenks agreed to permit a State Farm approved contractor, FireDEX, to perform the remedial work on their home. FireDEX prepared an estimate including a scope of work that involved removing all of the contaminated lumber plus four additional feet of contaminated material, replacing the material, and returning the home to its original condition.
>
> During the course of FireDEX's work, the Wenks, and in particular Mr. Wenk[,] took issue with an ever-increasing number of perceived deficiencies in the work performed by FireDEX. Additionally, the Wenks began to believe that the work performed by FireDEX was causing additional structural damage to other aspects of their home. The Wenks requested that State Farm engage an engineer to address their concerns regarding FireDEX's work and their concerns regarding damage to their home. State Farm declined to do so. The Wenks independently engaged their

---

[2] The contractor was D & R Equipment, Inc., tdba Mt. Pleasant Window and Remodeling Co., which subcontracted with Kohl Building Products, Inc. and Ronald Eubanks. The Wenks and State Farm, which asserted its subrogation interest and sought reimbursement of amounts payable to the Wenks, sued these entities separately in 2009, **Wenk v. D&R Equipment**, Allegheny County Common Pleas docket number GD 09-011729 ("**D&R Equipment**"), for claims of negligence, UTPCPL, trespass, breach of contract, and breach of warranty, many of the same claims sought herein.

[3] The complaint alleges the incident occurred on September 10, 2007.

- 3 -

own engineer to conduct a review of the work being performed. The Wenks' engineer identified what he considered to be deficient aspects of the work performed and offered an alternative remedial scope of work necessary to return the home to its original condition. State Farm declined to accept these recommendations. Nonetheless, as complaints and concerns continued to escalate, State Farm ultimately did review the work being performed by FireDEX, engaged an engineer of its choosing to review the work of FireDEX, and did ultimately confirm that some of the work was deficient.

In the process of allowing for and permitting the re-inspection of their home by each of the engineers, the Wenks made the unilateral decision to remove large portions of walls, flooring, and ceiling to allow the inspectors and engineers to see what the Wenks believed was evidence of deficient work by FireDEX. The Wenks' engineer agreed that these deconstruction exposures were helpful in permitting him to understand the problems and formulate solutions to the problems. State Farm's engineer did not believe that these deconstruction exposures of the home were at all necessary, but rather constituted unnecessary destruction of areas of the home. Principally because of the removal of the floors and walls, the Wenks' home became, in the Wenks' view, uninhabitable. Accordingly, they moved to alternative housing. Because they moved, they requested alternative living[-]expense payments under their State Farm insurance policy. Payment for these expenses were [sic] originally declined by State Farm, however, they were later approved, essentially, (in the view of State Farm,) as a good will gesture. In addition, the deconstruction of the home by the Wenks created a need for additional work to return the home to its original condition.

The Wenks' engineer and State Farm's engineer did not agree as to what remedial structural changes were necessary in order to ensure a structurally sound reconstruction of the Wenks' home so as to return it to its original condition. The Wenks generally became dissatisfied and suspicious of the work performed by FireDEX. In particular, the Wenks believed that FireDEX's work was unworkmanlike, unprofessional and often performed contrary to the applicable building codes and regulations. As a result, the Wenks ordered FireDEX from the site and refused to permit FireDEX to continue any work on the home.

The Wenks ultimately engaged CCTV [Technology ("CCTV")] to perform the reconstruction work consistent with the plans and design drawings of the Wenks' independently engaged engineer. CCTV is an entity owned by Mr. Wenk's parents. Mr. Wenk acknowledged that his father plays no active role in the company and that his mother serves purely as a treasurer. Mr. Wenk, while not an "owner" of CCTV, serves as the company's project manager and is personally in charge of all material operations of the company.[4] Accordingly, Mr. Wenk agreed with the proposition advanced by defense counsel that he, Mr. Wenk, negotiated an oral contract on behalf of the Wenks (himself and his wife) with himself, as project manager of and on behalf of CCTV, wherein CCTV would perform reconstruction work on the Wenks' home. Mr. Wenk offered extensive testimony regarding the manner in which he attempted to ensure that CCTV's costs and expenses charged to the Wenks were fair and reasonable. Nonetheless, because of the close relationship between CCTV and the Wenks, [State Farm and FireDEX] questioned the fairness and reasonableness of the CCTV estimate, charges, and expenses.

Memorandum Opinion and Verdict, 6/7/17, at 1–3.

All parties filed motions for summary judgment, which were denied on September 21, 2016. A bench trial occurred between April 17, and April 28, 2017.[5] The trial court issued a Memorandum Opinion and Verdict on June 7, 2017, and judgment was entered by praecipe on July 25, 2018. The trial court found as follows:

- In favor of State Farm and against the Wenks on claims sounding in breach of warranty, intentional infliction of emotional distress, UTPCPL and bad faith (whether statutory or institutional), including the demand for exemplary treble and punitive damages;

---

[4] Mr. Wenk described CCTV as follows: "Our primary role is we integrate camera systems in what's called biometrics, maybe with lock systems or payroll systems and that type of technology." N.T., 4/17/17, at 383, 467.

[5] The trial court erroneously stated that the trial occurred between May 17, and May 28, 2017. Memorandum Opinion and Verdict, 6/7/17, at 1.

- In favor of the Wenks and against State Farm on the Wenks' claim for breach of contract and granted judgment for the Wenks in the amount of $27,500;

- In favor of the Wenks and against FireDEX on the Wenks' claim for breach of contract, breach of warranty, and UTPCPL, awarding the Wenks $70,000 but declining to award exemplary treble damages, punitive damages, or attorney fees on the Wenks' UTPCPL claims and ruling the $70,000 was recoverable against either FireDEX or State Farm because FireDEX had acted under the direction and supervision of State Farm.

Memorandum Opinion and Verdict, 6/7/17, at 5–7. All parties filed post-trial motions. At a status conference on August 30, 2017, all parties agreed that the trial court would defer ruling on post-trial motions pending its ruling on State Farm and FireDEX's argument that the Wenks' award should be offset by the settlement, filed under seal, in the related case, **Wenk v. D&R Equipment**. The Wenks argued that the settlement should not be offset because State Farm and FireDEX were not joint tortfeasors in the related case.[6]

On March 6, 2018, the trial court denied setoff. Order, 3/6/18. State Farm filed a praecipe on July 25, 2018, for entry of judgment upon a nonjury verdict pursuant to Pa.R.C.P. 227.4. The Wenks assert that as a result, the trial court did not rule on the parties' motions for post-trial relief other than

_____

[6] State Farm was a plaintiff in the related case, and FireDEX was not a party.

- 6 -

the setoff issue raised by State Farm and FireDEX.[7]  Appellant's Brief at 7. The

Wenks appealed on August 23, 2018, and both State Farm and FireDEX filed

cross-appeals on September 5, 2018.  All parties and the trial court complied

with Pa.R.A.P. 1925.

### Issues in the Wenks' Appeal, 1287 WDA 2018

The Wenks raise the following issues:

1. Whether institutional evidence, such as an insurer's corporate policies and practices related to the handling of claims by its insureds, is <u>as a matter of law</u> irrelevant to a claim for insurance bad faith under 42 Pa. C.S. § 8371?

2. Irrespective of the answer to the Question No. 1, *supra,* whether the trial court abused its discretion when it determined that "it cannot be reasonably said, given the facts and evidence adduced at trial, that State Farm lacked a reasonable basis for denying benefits and/or that State Farm knew or recklessly disregarded its lack of a reasonable basis to deny benefits to the [the Wenks?]"

3. Whether an insurance company's handling of claims is a consumer transaction of the nature intended to be protected under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S. § 201-1, *et seq*[?]

4. Whether the UTPCPL requires plaintiffs to establish fraudulent and deceptive conduct when bringing claims based on violations of § 201-2(4), other than the "catch-all" provision at § 201-2(4)(xxi) of the statute[?]

5. If the answer to Question No. 4, *supra*, is "Yes," whether the trial court abused its discretion by finding that the evidence in this

---

[7]  Unlike the rules of criminal procedure requiring a court to act within 120 days of the filing of the post-trial motion or it will be deemed denied by operation of law, **see** Pa.R.Crim.P. 720(B)(3), the rules of civil procedure do not provide a similar automatic mechanism.  Rather, a party is required to *praecipe* for entry of judgment to move the case forward, where the court has not decided the motion within 120 days after its filing.  Pa.R.C.P. 227.4(1)(b).

case was insufficient to satisfy the clear and convincing standard[?]

The Wenks' Brief at 3–4 (emphasis in original).

### Issues in State Farm's Appeal, 1284 WDA 2018

1. Whether the [t]rial [c]ourt erred in in permitting the Wenks to obtain a double recovery by denying State Farm's Motion to apply a set-off for the amount recovered by the Wenks pursuant to a settlement agreement in a separate lawsuit filed against the original contractors who damaged their home with gasoline when the Wenks sought and recovered money for the . . . same categories of damages in both lawsuits?

2. Whether the [t]rial [c]ourt erred in finding that FireDEX acted at the "direction and supervision" of State Farm when the weight of the evidence reveals that State Farm did not direct, supervise, or otherwise control FireDEX's work and, therefore, should not be liable for the $70,000.00 awarded against FireDEX?

State Farm's Brief at 4.

### Issues in FireDEX's Appeal, 1288 WDA 2018

A. When an owner terminates a contractor's performance of repair work on a home and, thereby, deprives the contractor of the opportunity to cure any defects in its work, is the contractor entitled to judgment [notwithstanding the verdict ("JNOV")] on claims for damages due to inadequate repairs brought under theories of breach of contract or warranty or under the Unfair Trade Practices and Consumer Protection Law predicated upon a breach of warranty?

B. When homeowners settled their claims against remodeling contractors that allegedly damaged their home—claims which necessary[il]y included the original loss as well as any enhancement of damages due to another contractor's faulty repairs of the original damage—is the second contractor entitled to a setoff of any damages recovered from the original contractors to prevent a duplicate recovery by the owners?

FireDEX's Brief at 3.

We first address the Wenks' issues assailing the trial court's conclusion that the Wenks did not carry their burden of proof for claims of bad faith.[8] The Wenks assert that they introduced extensive evidence that State Farm acted in bad faith specifically directed toward the Wenks during State Farm's handling of the Wenks' claims. The Wenks' Brief at 29. The Wenks maintain that such evidence "included institutionalized conduct," such as State Farm's policies, practices, and other acts." *Id.* The Wenks contend, contrary to the trial court, that institutional evidence of bad faith is relevant in Pennsylvania under 42 Pa.C.S. § 8371. The Wenks' Brief at 22, 28–35. The Wenks aver that institutional bad faith is not a separate cause of action from statutory bad faith. *Id.* at 23, 30–31.

The Wenks cite to *Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164 (Pa. Super. 2012), where this Court concluded that the trial court erred in directing a verdict on the plaintiffs' bad-faith claim and remanded for a new trial, where the plaintiffs would have the burden to prove their bad-faith

_____

[8] The Wenks' Brief is a combination of argument on their issues presented in their appeal docketed at 1284 WDA 2018 and response to both State Farm and FireDEX cross-appeals. Unlike State Farm and FireDEX, the Wenks do not separate the claims—their arguments and responses to Appellees' arguments are co-mingled and presented as one.

Moreover, we are compelled to comment on the confusing and inconsistent presentation of this brief, which delineates issues 1–5 in the Statement of Questions Involved but provides argument labeled A–E, where the alphabetical sections do not correspond to the numbered issues. *See*, *e.g.*, issue 3 purporting to address the UTPCPL, the Wenks' Brief at 3, and Argument C, addressing bad faith.

allegations by clear and convincing evidence. The Wenks' Brief at 34. On remand, the Bergs obtained an eighteen-million-dollar verdict against Nationwide, and on appeal, this Court vacated the judgment and remanded for entry of judgment in favor of Nationwide. *Berg v. Nationwide Mut. Ins. Co.*, 189 A.3d 1030 (Pa. Super. 2018), petition for allowance of appeal granted in part, 205 A.3d 318, 569 MAL 2018 (Pa. filed March 29, 2019). The Wenks cite *Berg* as evidence that Pennsylvania courts consider institutional bad faith. The Wenks also maintain that consideration of institutional evidence of bad faith in Pennsylvania is consistent with other jurisdictions. The Wenks' Brief at 38 (citing *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003)).

Pennsylvania's Bad Faith Statute, 42 Pa.C.S. § 8371, creates a cause of action against an insurance company "if the court finds that the insurer has acted in bad faith toward the insured." The statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. The statute does not define "bad faith," but courts generally have defined the term as "any frivolous or unfounded refusal to pay

- 10 -

proceeds of a policy." ***Rancosky v. Washinton National Ins. Co.***, 170 A.3d 364, 365, 372–373 (Pa. 2017) (quoting ***Terletsky v. Prudential Property & Casualty Ins. Co.***, 649 A.2d 680, 688 (Pa. Super. 1994)).  To recover on a bad-faith claim, a claimant is required to show, by clear and convincing evidence, that the insurer: (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded its lack of reasonable basis when it denied the claim.  ***Rancosky***, 170 A.3d at 365.  Claims of bad faith are fact specific and depend on the conduct of the insurer toward its insured.  ***Condio v. Erie Ins. Exch.***, 899 A.2d 1136, 1143 (Pa. Super. 2006).

The trial court concluded the Wenks failed to meet their burden of proving State Farm acted in bad faith.  The trial court stated:

> With respect to [the Wenks'] claims for statutory bad faith pursuant to 42 Pa.C.S. § 8371, I conclude that [the Wenks] have not met their burden, and I find in favor of Defendant State Farm. It cannot be reasonably said, given the facts and evidence adduced at trial, that State Farm lacked a reasonable basis for denying benefits and/or that State Farm knew or recklessly disregarded its lack of a reasonable basis to deny benefits to [the Wenks].  Mere negligence or bad judgment in failing to pay a claim does not constitute bad faith.  An insurer may always aggressively investigate and protect its interests.  Particularly in light of the higher burden of proof, specifically the requirement that [the Wenks] must prove a bad faith claim by "clear and convincing" evidence, the record in this case does not support the assertion of statutory bad faith on behalf of State Farm.  Accordingly, I find for the Defendant, State Farm.

Memorandum Opinion and Verdict, 6/7/17, at 6.

Our review of the record compels the conclusion that the trial court did not abuse its discretion in concluding that the Wenks failed to present clear and convincing evidence that State Farm acted in bad faith under 42 Pa.C.S. § 8371. As noted above, to establish a violation of Section 8371, the Wenks must have shown by clear and convincing evidence that State Farm lacked a reasonable basis for denying the Wenks benefits, and that it knew or recklessly disregarded its lack of a reasonable basis. *Rancosky*, 170 A.3d at 377.

The Wenks assert that State Farm acted in bad faith by refusing to pay their engineering fees and delaying hiring its own engineer for over a year when the opportunity to address the Wenks' issues had already passed. The Wenks' Brief at 42, 44. They contend that when State Farm did hire an engineer, it "restricted the engineer's ability to offer opinions on the Wenks' concerns." *Id.* at 46. The Wenks maintain that State Farm also acted in bad faith by instructing "FireDEX and its engineer to disregard [building] code compliance issues raised by the Wenks." *Id.* at 51.

State Farm denies acting in bad faith and points to their payment of project management fees of $16,640, which included payment of engineering fees. State Farm's Brief at 26 (citing Exh. 111, Jones Construction estimate, 3/26/10). State Farm defends their initial decision not to hire an engineer based upon information provided by FireDEX, Mr. Wenk, and the building code officer. State Farm's Brief at 26 (citing N.T., 4/17/17, at 252–256). State Farm also responds that once the Wenks agreed to provide a list of their

concerns, State Farm agreed to hire an engineer to evaluate those issues. State Farm's Brief at 28 (citing Exh. 166; N.T., 4/17/17, at 280). State Farm's engineer, Randall Lee Exley, testified that his inspection did not find that the Wenks' home was structurally unsound or uninhabitable. N.T., 4/17/17, at 1161–1162, 1170–1171. Regarding the alleged building code noncompliance, Nikole Sullivan, the State Farm claims adjuster assigned to the Wenks, testified she never told FireDEX that the building code did not apply to the repairs of the Wenks' home; indeed, it was State Farm's expectation that FireDEX would complete the repairs "in accordance with the existing code." N.T., 4/18/17, at 251–252.

We have reviewed the extensive record. We agree with the trial court's conclusion that the Wenks failed to meet their burden of proving bad faith by State Farm by clear and convincing evidence. As espoused by State Farm, Section 8371 limits bad faith actions to the company's conduct toward the insured asserting the claim. Under this premise, this Court has held that "[b]ad faith claims are fact specific and depend on the conduct of the insurer *vis a vis* the insured." State Farm's Brief at 36 (citing ***Williams v. Nationwide Mut. Ins. Co.***, 750 A.2d 881, 887 (Pa. Super. 2000)). The trial court, as the fact finder, was responsible for determining the credibility of the witnesses and the evidence. Based upon our review of the record, we cannot say the trial court erred in concluding that the Wenks did not prove by clear and convincing evidence that State Farm did not have a reasonable basis for

denying them benefits under the policy, and did not know or recklessly disregard a lack of reasonable basis when it denied the claim. ***Rancosky***, 170 A.3d at 365.

Finally, the trial court properly concluded that there is no separate cause of action of institutional bad faith. Memorandum Opinion and Verdict, 6/7/17, at 6. Indeed, the Wenks agree that institutional bad faith is not a separate cause of action from statutory bad faith. The Wenks' Brief at 30. We disagree with the Wenks' contention that the trial court's statement, "With respect to [the Wenks'] claims of 'institutional bad faith,' I find for . . . State Farm. Pennsylvania law does not recognize claims for institutional bad faith," equates to the conclusion that the trial court refused to consider the Wenks' evidence relating to State Farms' conduct and practices. The Wenks' Brief at 30. Our review of the record reveals that the Wenks produced evidence of State Farm's manuals, guidelines, and procedures, all of which was considered by the trial court. Section 8371, however, authorizes specified actions by the trial court "if the court finds that the insurer has acted in bad faith **toward the insured** . . . ," not to the world at large. 42 Pa.C.S. § 8371 (emphasis added). Thus, herein, the trial court, when presented with evidence of State Farm's policies and procedures, did not find them to be improper **when applied to the Wenks' claim**, although not a separate claim concerning "institutional bad faith." The Wenks failed to establish a nexus between State

Farm's business policies and the specific claims the Wenks asserted in support of bad faith.

The Wenks alternatively ask this Court to "reverse the trial court's dismissal of the Wenks' claim based on State Farm's violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law." The Wenks' Brief at 67. They assert they presented uncontroverted evidence at trial that State Farm engaged in fraudulent and deceptive conduct. *Id.* at 25, 67. They allege the following deceptive and misleading conduct by State Farm:

> a) Misrepresentations of State Farm's relationship to [State Farm's Premier Service Provider network] contractors generally, and FireDEX in particular, in regard to the supervision and control that State Farm exerts over it/them.
>
> b) Misrepresentations to Mr. Wenk in March 2008 that the building code did not apply to the construction at his home.
>
> c) Misrepresentations to the Wenks that their home was structurally sound and safe when there was no reasonable basis for making that assertion.

The Wenks' Brief at 69. The Wenks ask this Court to vacate the verdict dismissing their UTPCPL claims against State Farm and remand for entry of judgment in favor of the Wenks and an award of damages, including punitive damages, interest, and counsel fees. *Id.*

The Wenks contend the trial court also failed to address their UTPCPL claims against FireDEX. The Wenks allege these violations by FireDEX:

> 1. FireDEX misrepresented to the Wenks that it had the expertise and experience necessary to perform the contracted services

when FireDEX knew that State Farm would prevent it from making repairs in accordance with the representations FireDEX made to the Wenks;

2. FireDEX failed to comply with the terms of the warranty given to the Wenks in violation of 73 P.S. §201-2(xiv);

3. FireDEX made repairs and replacements to the Wenks' house that were inferior to or below the standard of that agreed to in writing in violation of 73 P.S. §201-2(xvi);

4. FireDEX misrepresented the nature of its relationship with State Farm, including failure to disclose that the performance of its work would be subject to a separate contract with State Farm that allowed State Farm to direct and supervise FireDEX, in violation of 73 P.S. §201-2(4)(iii);

5. FireDEX misrepresented the requirements of the applicable building codes, ordinances and regulations; and

6. FireDEX misrepresented that its repair services were of a particular standard or quality, in order to induce the Wenks to utilize FireDEX in violation of 73 P.S. §201-2(4)(vii).

The Wenks' Brief at 70–71. They argue that the trial court concluded only that FireDEX's UTPCPL violations were limited to its failure to comply with the terms of a written guarantee or warranty to the Wenks and failed to address the Wenks' other UTPCPL claims. *Id.* at 72, 73. The Wenks ask this Court to vacate the verdict "that erroneously required the Wenks to show that FireDEX's conduct was 'deceptive or fraudulent' with respect to its violation of 73 P.S. § 201-2(xiv)" and remand to the trial court with instructions to award treble damages, costs, and reasonable counsel fees. *Id*. at 76–77.

The UTPCPL was enacted to protect consumers "from fraud and unfair or deceptive business practices." ***Commonwealth ex rel. Corbett v.***

- 16 -

*Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1236 (Pa. Cmwlth. 2007)

(citing *Commonwealth by Creamer v. Monumental Properties, Inc.*, 329

A.2d 812 (Pa. 1974)).  The UTPCPL applies to the **sale** of an insurance policy,

it does not apply to the **handling** of insurance claims, as alleged herein.

*Neustein v. Government Employees Insurance Co.*, 2018 WL 6603640

(W.D. Pa. filed November 29, 2018) (slip op. at *2) (emphasis added).[9]

Rather, 42 Pa.C.S. § 8371 "provides the exclusive statutory remedy applicable

to claims handling." *Id.*

---

[9]  We acknowledge that:

> federal court decisions do not control the determinations of the Superior Court. Our law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved . . . . [However, w]henever possible, Pennsylvania state courts follow the Third Circuit [Court of Appeals] so that litigants do not improperly "walk across the street" to achieve a different result in federal court than would be obtained in state court.

*McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 106 n.13 (Pa. Super. 2015) (quoting *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012) (citations omitted)).  Further:

> When confronted with a question heretofore unaddressed by the courts of this Commonwealth, we may turn to the courts of other jurisdictions. "Although we are not bound by those decisions," "we may use decisions from other jurisdictions for guidance to the degree we find them useful and not incompatible with Pennsylvania law."

*Commonwealth v. Manivannan*, 186 A.3d 472, 483–484 (Pa. Super. 2018) (citing *Newell v. Mont. W., Inc.*, 154 A.3d 819, 823 and n.6 (Pa. Super. 2017) (citation and internal quotation marks omitted)).

We rely upon the trial court's explanation in addressing State Farm's and FireDEX's UTPCPL issues. The trial court explained as follows:

> With respect to the Unfair Trade Practices and Consumer Protection Law claims against State Farm, I find for State Farm. Although I have considered all of the specific allegations asserted by [the Wenks] against State Farm, it is sufficient for purposes of this Memorandum to simply note that I do not conclude that State Farm engaged in fraudulent or deceptive conduct. I also note decisional law of this [c]ourt and Pennsylvania state and federal jurisdiction concluding that Unfair Trade Practices and Consumer Protection Law claims are not amenable to claims which are, in substance, principally assertions of inappropriate claims handling by insurance companies, because claims handling is not a consumer transaction of the nature intended to be protected under the Unfair, Trade Practices Consumer Protection Law.

> * * *

> With respect to the Unfair Trade Practices and Consumer Protection Law claims brought by the [Wenks] against Firedex, I am constrained to find for the Wenks and against Firedex. While the [Wenks] advance numerous theories supporting their Unfair Trade Practices and Consumer Protection Law claims, and point to multiple issues of contention respecting the work performed by Firedex, representations and conduct of Firedex during the job, including of Firedex's purportedly misleading, dishonest, and disreputable tactics, and strategies, I am not persuaded based upon what I find to be the competent and credible evidence of record that Firedex engaged in any deceptive or fraudulent conduct as defined by or required under the Unfair Trade Practice and Consumer Protection Law. A detailed discussion of all of the allegations and evidence proffered in support and rebuttal of each is not warranted in the context of this Memorandum. However, it is worth noting a particular piece of testimony by Mr. Wenk, wherein he observes that he believed that Mr. Fanning, the project manager for Firedex, was dutifully working on behalf of the Wenks in a sustained effort to repair the Wenks' home (and would have succeeded if only, in the mind of Mr. Wenk, State Farm had permitted him to do so).

> Notwithstanding my conclusion that Firedex, did not engage in deceptive or fraudulent conduct, my interpretation of the Unfair

Trade Practices and Consumer Protection Law found at 73 P.S. §201-2 (4)(xiv) compels me to conclude that Firedex has violated the UTPCPL. The relevant section of the Act indicates:

"**Unfair methods of competition**" and "**Unfair or deceptive acts or practices**" mean any one or more of the following: (xiv) failing to comply with the terms of any written, guarantee or warranty given to the buyer at, prior to or after a contract for the purpose of goods or services is made;

Accordingly, Firedex's breach of its warranty, notwithstanding its good intentions and lack of fraudulent or deceptive intentions, in and of itself, constitutes a violation of the UTPCPL. In this instance, that violation warrants recovery of the same compensatory losses the Wenks would be entitled to under the breach of contract claim. (Which are themselves, also recoverable against State Farm). While the Wenks are theoretically entitled to additional damages under the UTPCPL, these damages are recoverable at the discretion of the fact finder,[10] and are only warranted where the conduct of the Defendant is, in some respect egregious, offensive or otherwise recklessly or intentionally dismissive of the rights of the Plaintiff. I do not conclude that Firedex's conduct meets this standard. Accordingly, while I recognize the availability of exemplary damages under the UTPCPL, I do not believe the facts in this case warrant the imposition of the same.

Memorandum Opinion and Verdict, 6/7/17, at 5–8 (emphases in original).

In sum, the trial court rejected the applicability of the UTPCPL to the Wenks' claims against State Farm. The UTPCPL applies to consumer transactions, which are statutorily defined; the handling of an insurance claim does not meet the statutory definition. *See*, *e.g.*, *Neustein*. As to the claims

---

[10] 73 P.S. § 201-9.2 provides, *inter alia*, that a "court may, **in its discretion**, award up to three times the actual damages sustained . . . ." (emphasis added).

against FireDEX, the trial court found for the Wenks but exercised its discretion, **Schwartz v. Rockey**, 932 A.2d 885 (Pa. 2007), and rejected the Wenks' claim for enhanced damages under the UTPCPL. **Nexus Real Estate, LLC v. Erickson**, 174 A.3d 1, 5 (Pa. Super. 2017) (Trial courts "should focus on the presence of intentional or reckless, wrongful conduct," with which an award of treble damages would be consistent, "in furtherance of the remedial purposes of the UTPCPL.") (quoting **Schwartz**, 932 A.2d at 897–898).  We affirm the trial court's discretionary finding that the Wenks failed to prove reckless or intentional misconduct by FireDEX that would warrant additional statutory relief, and we affirm the trial court's resolution of the UTPCPL claims.

In its cross appeal, FireDEX argues that it was entitled to JNOV because the Wenks, in terminating FireDEX before work was completed, deprived it of the opportunity to cure any defects.  FireDEX's Brief at 16.  FireDEX improperly cites to **Wyse v. Leone**, 121 A.3d 1118, 201 WDA 2014 (Pa. Super. 2015) (unpublished memorandum), in support.[11] We rely on the trial court's disposition in rejecting this claim, as follows:

> FireDEX asserts that, because FireDEX was fired by [the Wenks] without being afforded an opportunity to cure the defects in FireDEX's work, this [c]ourt erred in holding that FireDEX breached its contract and warranty.  Initially, the [c]ourt notes that the present case did not involve a situation where the work

---

[11] Although Pa.R.A.P. 126 recently was amended to allow parties to rely on non-precedential unpublished decisions of this Court as persuasive authority, this amendment applies only to decisions filed after May 1, 2019.  As **Wyse** was filed four years earlier, on April 1, 2015, this unpublished memorandum cannot serve as persuasive authority.

performed by FireDEX was merely incomplete. Rather, there was ample evidence to support [the Wenks'] contention that FireDEX failed to perform its work consistent with industry standards and/or applicable codes and regulations, and that FireDEX thus performed its work in an unworkmanlike manner. **Further, FireDEX was afforded an opportunity to remedy the deficiencies in its work when it was informed by [the Wenks] of their dissatisfaction** with FireDEX's work, specifically with respect to FireDEX's failure to adhere to applicable codes and regulations. Despite knowledge of [the Wenks'] dissatisfaction, FireDEX continued to perform its work in an unworkmanlike manner. For these reasons, FireDEX's citation to *Wyse v. Leone*, 2015 WL 7424731 (Pa. Super. Apr. 1, 2015) [(unpublished memorandum)] does not support FireDEX's argument that this [c]ourt erred in holding that FireDEX breached its contract and warranty.

Pa.R.A.P. 1925(a) Opinion, 11/30/18, at 3 (emphasis added).

Also in their cross-appeals, State Farm[12] and FireDEX both assail the trial court's determination that they were not entitled to a setoff of the settlement in **D&R Equipment**, the case against the original remodeling contractors who poured gasoline on the Wenks' home. FireDEX's Brief at 23–29; State Farm's Brief at 53–58. Because the settlement of that lawsuit specifically included recovery for damages the Wenks also sought in the case *sub judice*, including money to compensate them for damage to their home and personal property, additional living expenses, loss of the use of the home, and loss of market value, the trial court granted leave to State Farm and FireDEX prior to trial in the instant case, to amend their New Matter to assert

---

[12] We do not address State Farm's issue concerning liability of the $70,000 award to the Wenks due to our vacation of that judgment, *infra*.

- 21 -

a claim for a setoff. The trial court ultimately denied applying a setoff of the amounts recovered in **D&R Equipment** against the verdict herein.

In denying the setoff, which was sought by Appellees in post-trial motions, the trial court explained as follows:

> [The Wenks] settled with the original contractor for a certain sum, which was compensation for a variety of damages. [Appellees] now argue that they are entitled to a setoff because the settlement fully compensates [the Wenks] for their damages, and under Pennsylvania law, [the Wenks] are not entitled to recover twice for the same injury. [The Wenks] argue that [Appellees] are not entitled to a setoff because [Appellees] and the original contractor are not joint tortfeasors. *See Amato v. Bell & Gossett*, 116 A.3d 607, 616 (Pa. Super. 2015), citing *Ball v. Johns–Manville Corp.*, 625 A.2d 650, 659-60 (Pa. Super. 1993) (While some states...permit the apportionment of liability among all tortfeasors, even those who have not been made parties, Pennsylvania's statute does not so provide).
>
> I agree with [the Wenks] that the original contractor and [Appellees] are not joint tortfeasors and therefore, [Appellees] are not entitled to a setoff. **I recognize that [Appellees] have proffered a well reasoned and sensible argument that they are not required to be joint tortfeasors in order to be entitled to a setoff.** In *Lasprogata v. Qualls*, 397 A.2d 803 (Pa. Super. 1979), [the] Plaintiff sustained injuries during a traffic accident and sustained further injuries after alleged negligent treatment of that injury. [The] Plaintiff brought suit against both the driver and the doctor who treated his injuries. *Id.* at 804. Citing § 457 of the Restatement (Second) of Torts,[1] the court held that the driver was liable for all of the Plaintiff[']s injuries even though the driver and the doctor were not joint tortfeasors. *Id*. at 806. § 457 of the Restatement, however, deals only with bodily injury, so it does not apply to the damages in this case. Accordingly, [Appellees] argument is insufficient to overcome the rationale and dictates of *Amato*. Given that [Appellees] and the original contractor are not joint tortfeasors, [Appellees] are not entitled to a setoff, and I am denying their Motion.
>
> > [1] "If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional

- 22 -

bodily harm resulting from normal efforts of third parties in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner."

Memorandum and Order of Court, 3/6/18, at 1–2 (emphasis added).

State Farm argues the trial court erred in refusing to apply a setoff "because Pennsylvania law clearly allows only one recovery for an injury," and allowing the Wenks to recover "from different parties for the same damages affords them a double recovery," which violates Pennsylvania law. State Farm's Brief at 23. State Farm asserts, contrary to the trial court, that Pennsylvania law does not require State Farm to be a joint tortfeasor with D&R Equipment, Inc. for a set-off to apply. *Id.* at 54.

FireDEX similarly contends the action in *D&R Equipment* sought some of the same elements of damages as were pled in this case. FireDEX's Brief at 16. It takes issue, like State Farm, with the trial court's holding that a setoff is not permitted because Appellees were not joint tortfeasors with D&R Equipment. *Id.* at 23.

Both State Farm and FireDEX cite *Lasprogata v. Qualls*, 397 A.2d 803 (Pa. Super. 1979), in support. While *Lasprogata* is factually distinguishable, it is relevant in theory. In that case, the plaintiff was injured in a motor vehicle accident and required surgery, during which a complication occurred, hindering recovery and necessitating additional treatment. *Lasprogata*, 397 A.2d at 804. The plaintiff settled his lawsuit against the other driver and later filed suit against the doctor who performed the surgery. This Court

determined, despite the fact that the doctor was not a joint tortfeasor with the other driver, that damages recovered from each defendant must be apportioned to prevent the plaintiff from receiving a double recovery. *Id.* at 806–807. The trial court herein improperly limited *Lasprogata* to bodily-injury claims. Neither the Wenks or the trial court cite authority, nor have we found any, that requires such a narrow view.

*Amato v. Bell & Gossett*, 116 A.3d 607 (Pa. Super. 2015),[13] cited by the trial court, is distinguishable. That case involved contribution among asbestos manufacturers who were alleged to be joint tortfeasors. We agree with FireDEX that the *Amato* Court distinguished *Lasprogata*, which "recognized the difference between joint tortfeasors[,] whose wrongdoing combined to cause a single harm[,] and successive tortfeasors[, who] caused distinct injuries or damages," and this Court "allowed apportionment, not contribution." FireDEX's Brief at 27. Moreover, herein, unlike in *Amato*,[14] Appellees' liability is predicated upon the negligence of D&R Equipment, the

---

[13] Thomas Amato, a boilermaker, developed mesothelioma and sued twenty-four manufacturers of asbestos-containing products, one of which was Cranite, a sheet gasket material supplied by Crane Co. The jury determined that Mr. Amato's exposure to Cranite was a factual cause of his mesothelioma. *Amato*, 116 A.3d at 612.

[14] In *Amato*, this Court emphasized that Crane's liability was not predicated "upon the liability of any third party, *i.e.*, the settling defendants or non-parties," who were the asbestos manufacturers." Rather, Crane Co.'s liability was based on the "deleterious effects of its own products upon [Mr. Amato]." *Amato*, 116 A.3d at 616.

non-party tortfeasor. **Amato's** holding with respect to the "requirement" that an offset is appropriate only when the defendant and a settling non-party are joint tortfeasors was modified by the crucial distinction that Crane Co.'s liability was not predicated on the negligence of the settling tortfeasors, the asbestos manufacturers, a distinction absent in the instant case. State Farm's Reply Brief at 2–3; **see also Brown v. City of Pittsburgh**, 186 A.2d 399, 402 (Pa. 1962) ("[F]or the same injury, an injured party may have but one satisfaction . . . .").

We conclude the trial court erred in dismissing, as a matter of law, State Farm's and FireDEX's requests for a setoff and instead, should have analyzed the facts of the claims sought in both cases and the settlement reached in **D&R Equipment**, in order to ensure that there was no duplication of recovery. Therefore, we remand the matter for the trial court to hold an evidentiary hearing to receive additional evidence, if any, and hear argument regarding the injuries and damages claimed in each case, the amounts the Wenks received, and the terms of the release in **D&R Equipment**.[15]

Thus, we affirm the dismissal of the bad faith and UTPCPL claims against State Farm. We vacate the $70,000 judgment recoverable against State Farm and/or FireDEX and remand to the trial court to hold an evidentiary hearing

---

[15] In light of our remand and our vacation of the $70,000 damage award, we need not address State Farm's argument that the trial court's award of $70,000 in damages to the Wenks' due to improper work by FireDEX is recoverable against either FireDEX or State Farm.

and examine the damages recovered in **D&R Equipment** and apply a setoff, if necessary.

Judgment in favor of the Wenks in the amount of $70,000 recoverable against FireDEX and/or State Farm is vacated. Case remanded for proceedings in accordance with this Opinion. In all other respects, the judgment is affirmed. Application for Relief is denied.[16] Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2020

---

[16] The Wenks filed an Application for Relief on August 16, 2019, in which they request inclusion of a transcribed portion of a video exhibit into the record that was prepared in October, 2018, eighteen months after the conclusion of the trial in this case. N.T., 3/12/19, at 2–3. At trial, the trial court reviewed a portion of the video file, which is contained on a flash drive, and played a portion of the video at trial. N.T., 4/18/17, at 192–197. The Wenks did not offer a transcript of the video at trial, the trial court stated that the audio of the video clip was "contested" and "undecipherable," and the Wenks declined and did not object when the trial court excused the court reporter and asked if they wanted "anything you're saying on the record." **Id.** at 194. The trial court heard argument and correctly granted the joint motion to strike the transcript of the video from the record because it "was not entered nor offered at the time of trial, the audio of the videoclip "was significantly compromised," and the trial court determined that it "was unable to discern any material relevant evidence to be derived therefrom." Order, 3/15/19. The Application is denied.