[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12002

_____

D.C. Docket No. 1:12-cv-00232-MP-GRJ

CAROLINA CASUALTY INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellee,

versus

RED COATS INC.,
d.b.a. Admiral Security Services, Inc.,

Defendant-Counter Claimant-Appellant,

ROGER F. KUZNIK, et al.,

Defendants,

CONTINENTAL CASUALTY COMPANY,
NATIONAL UNION FIRE INSURANCE CO OF PITTSBURGH PA ,

Counter Defendants-Appellees,

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

Counter Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 17, 2015)

Before ED CARNES, Chief Judge, and ROSENBAUM, Circuit Judge, and
SMITH,[*] District Judge.

PER CURIAM:

Because the parties are well aware of the facts and procedural history of this
complex insurance dispute, we will leave off a discussion of them and get to the
point.

**I.**

The district court determined that either Florida or Maryland law applied to
this lawsuit. We review de novo its choice of law determination and apply
Florida's choice of law rules. See Schippers v. United States, 715 F.3d 879, 884
(11th Cir. 2013); Menendez v. Perishable Distribs., Inc., 763 F.2d 1374, 1378
(11th Cir. 1985).

In contract cases, Florida applies the lex loci contractus: "the law of the
jurisdiction where the contract was executed." State Farm Mut. Auto. Ins. Co. v.
Roach, 945 So. 2d 1160, 1163 (Fla. 2006). "The determination of where a contract

_____

[*] Honorable C. Lynwood Smith, United States District Judge for the Northern District of
Alabama, sitting by designation.

2

was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done." Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc., 363 F.3d 1089, 1092–93 (11th Cir. 2004) (alteration and quotation marks omitted) (applying Florida law).  The district court did not perform that fact-intensive inquiry and did not decide whether Florida or Maryland law applied.  Instead, it ruled that the result in this lawsuit would be the same no matter which state's law applied.  That is not entirely correct.

When construing insurance policies Florida and Maryland courts start in the same place:  They interpret the plain language of the policy as a whole.  Compare Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) with Collier v. MD-Individual Practice Ass'n, Inc., 607 A.2d 537, 539 (Md. 1992).  But their constructions of ambiguous language differ in an important way.  Florida courts construe ambiguous terms in insurance contracts "liberally in favor of the insured and strictly against the drafter who prepared the policy."  Anderson, 756 So. 2d at 34; see id. ("[E]xclusionary clauses are construed even more strictly against the insurer than coverage clauses.").  Maryland courts, however, construe insurance policies "in the same manner as contracts generally," without construing them "most strongly against the insurer."  Collier, 607 A.2d at 539.

When the district court ruled that Florida and Maryland law led to the same result in this lawsuit, it failed to acknowledge that the two are different.  We must

3

determine whether that failure led the district court to the wrong result.  See

Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1151 (11th Cir. 2005) ("Our

review is, as we have said, de novo.  That means we review the judgment, not the

soundness of the district court's explanation for it.").

The district court's failure to recognize the distinctions between Florida and

Maryland law did not, however, affect its judgment in favor of Carolina Casualty.

The dispute between Admiral and Carolina Casualty turns on the meaning of the

phrase "employment relationship" and whether that phrase applies to Admiral's

relationship with AvMed.  The Carolina Casualty insurance policy covers

Admiral's settlement payment to AvMed only if Admiral and AvMed were in an

"employment relationship" within the meaning of the policy.

Even if we apply Florida's rule that ambiguous terms in insurance contracts

are construed "liberally in favor of the insured," Anderson, 756 So. 2d at 34,

Admiral and AvMed did not have such an "employment relationship."  Reviewing

the policy as a whole, we hold that it was designed to apply to damages arising

from disputes between Admiral and its own employees, not between Admiral and

another entity employing it.  Admiral's relationship with AvMed, therefore, was

not an "employment relationship" under the Carolina Casualty policy, and the

policy provides no coverage for the settlement amount paid by Admiral.

Admiral additionally contends that Carolina Casualty breached its duty to defend Admiral against AvMed's complaint.  Under both Florida and Maryland law, Carolina Casualty had a duty to defend Admiral if AvMed's complaint alleged a claim that was even potentially covered under the policy.  See Jones v. Fla. Ins. Guar. Ass'n, 908 So. 2d 435, 442–43 (Fla. 2005); Walk v. Hartford Cas. Ins. Co., 852 A.2d 98, 106–07 (Md. 2004).  We have just held that the Carolina Casualty policy covers only claims brought against Admiral by its own employees.  AvMed's complaint against Admiral made clear that AvMed was not an employee of Admiral.  In fact, it suggested just the opposite — that Admiral was an employee of AvMed.  As a result, AvMed's complaint was not even potentially covered by the policy, and Carolina Casualty had no duty to defend Admiral.

Although the district court misinterpreted Florida and Maryland law, it correctly entered judgment for Carolina Casualty.  We must affirm.  See Turner v. Am. Fed'n of Teachers, 138 F.3d 878, 880 n.1 (11th Cir. 1998) ("We must affirm the judgment of the district court if the result is correct even if the district court relied upon a wrong ground or gave a wrong reason.").

## II.

Unlike Admiral's dispute with Carolina Casualty, the choice of law governing Admiral's dispute with its two comprehensive general liability (CGL) insurers, National Union and Continental, may be dispositive.

5

Two questions about that CGL dispute could turn on which state's law applies. The first is whether the CGL policies covered Admiral's settlement payment to AvMed. Whether the CGL policies provide coverage depends on whether the damages alleged by AvMed were "damages because of . . . 'property damage.'" If the CGL policies cover Admiral's claim, then a second question might turn on which state's law applies: whether the electronic-data exclusion applies to Admiral's attempt to recover its payments to AvMed. Both CGL policies exclude coverage for damages "arising out of the loss of [or] loss of use of . . . electronic data." Those two phrases may be ambiguous. If they are ambiguous, then the difference between Florida and Maryland law may determine whether Admiral's claim succeeds or fails.

We choose not to attempt the "fact-intensive" determination of which state's law applies. Prime Ins. Syndicate, Inc., 363 F.3d at 1092. And we choose not to resolve the legal issues in this dispute without knowing which state's law applies. See Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1372 n.5 (11th Cir. 1998) ("[T]he general rule [is] that a court of appeals will not consider issues not reached by the district court, especially where the issues involve questions of fact."). We will therefore vacate the judgment in favor of National Union and Continental and remand for the district court to decide whether Florida law or Maryland law applies

6

and whether, under the applicable state law, the CGL policies provide coverage for Admiral.

## III.

The district court's judgment in favor of Carolina Casualty is **AFFIRMED**. Its judgment in favor of National Union and Continental is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.