J-A10032-21

2021 PA Super 125

PENN PSYCHIATRIC CENTER, INC : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
UNITED STATED LIABILITY : No. 1462 EDA 2020
INSURANCE COMPANY :

Appeal from the Order Entered June 17, 2020
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2019-28413

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED JUNE 17, 2021**

This is an appeal from an order dismissing an insurance coverage action brought by Penn Psychiatric Center, Inc. (Insured) against United States Liability Insurance Company (Insurer) on preliminary objections.  Insured claimed that it was entitled to coverage under an employment practices insurance policy for an action brought against Insured and one of its therapists by Amanda Madonna and Adrienne Martorana, two former patients who had no employment relationship with Insured (the Underlying Action).  The Court of Common Pleas of Montgomery County (trial court) sustained Insurer's preliminary objections in the nature of a demurrer on the ground that the allegations in the Underlying Action do not fall within the definition of a

_____

[*] Retired Senior Judge assigned to the Superior Court.

"Wrongful Act" covered by Insurer's policy. For the reasons set forth below, we affirm.

Plaintiffs Madonna and Martorana filed the Underlying Action in November 2018. The complaint in the Underlying Action alleges that the therapist, under the guise of providing therapy for past sexual abuse, groped and sexually assaulted plaintiff Madonna and sent her sexually charged messages, and that after she complained about his conduct, the therapist threatened her and gave information protected by the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) to his girlfriend, who then harassed and threatened her. Madonna/Martorana First Amended Complaint (attached to Insured's Amended Complaint as Ex. A) ¶¶63-72, 75-79, 83-87, 93-106, 109-16, 122-24. This complaint also alleges that the same therapist, under the guise of providing therapy for past sexual abuse, groped plaintiff Martorana and sexually propositioned her. *Id.* ¶¶140-50. The complaint in the Underlying Action asserts claims of negligent hiring, negligent supervision, negligent undertaking to render services, violations of the Unfair Trade Practices and Consumer Protection Law, and negligent misrepresentation against Insured, alleging that Insured's conduct caused the plaintiffs to be treated by and assaulted by the therapist. *Id.* ¶¶158-212, 258-307. It also asserts claims of negligence *per se*, professional negligence, and negligent infliction of emotional distress against the therapist and against Insured on the ground that Insured is vicariously liable for the therapist's acts.

*Id.* ¶¶213-257. Plaintiff Madonna's negligence *per se* count includes a claim that the therapist's sharing of her patient information with his girlfriend violated HIPAA and that Insured is vicariously liable for his HIPAA violation. *Id.* ¶¶215-17.

Insurer provided employment practices liability insurance coverage to Insured under Medical Providers Employment Practices Protection Insurance Policy No. MP1006654F (the Policy). Insured's Amended Complaint ¶11; Policy (attached to Insured's Amended Complaint as Ex. B), Declarations & Coverage A, Coverage Form at 1-6. The Policy is a claims-made policy providing coverage to Insured for the period October 18, 2018 to October 18, 2019. Policy, Declarations.

The Policy provides indemnity and defense for actions and other proceedings that seek to impose liability on Insured for a "Wrongful Act" as that term is defined in the Policy. Policy, Coverage A § I, § III (B), Coverage Form at 1. The Policy defines "Wrongful Act" as follows:

> **"Wrongful Act" means any actual or alleged act of**:
> (1) Discrimination; or
> (2) Harassment; or
> (3) Retaliation; or
> (4) Wrongful Termination; or
> (5) **Workplace Tort**; or
> (6) negligent violation of the Uniform Services Employment & Reemployment Rights Act; or
> (7) negligent violation of the Family and Medical Leave Act of 1993; or
> (8) negligent violation of state law having the same or substantially similar purpose as the Acts in (6) or (7) above; or
> (9) acts described in clauses (1) through (8) above arising from the use of the Organization's Internet, e-mail, telecommunication

or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the Organization's Internet, e-mail, telecommunication or similar systems;
committed or allegedly committed by the Organization or by an Individual Insured acting solely within his/her capacity as such **involving and brought by any Employee, former Employee, or applicant for employment with the Organization** or asserted by any Employee, former Employee or applicant for employment with the Organization against an Individual Insured because of his/her status as such.
**Wrongful Act shall also include any actual or alleged act of:**
**(1)   Third Party Discrimination**[.]

*Id.* § III(V), Coverage Form at 4 (emphasis added).[1]   The definitions of "Discrimination," "Harassment," "Retaliation," and "Wrongful Termination" all limit coverage to claims arising out of an employment relationship or application for employment.  *Id.* §§ III(E), (H), (P), (W), Coverage Form at 1-4.

The Policy defines "Workplace Tort" and "Third Party Discrimination" as follows:

**"Third Party Discrimination" means discrimination by an Insured** in their capacity as such **against a Third Party based on such Third Party's race, religion, age, sex, disability, national origin, marital status, sexual orientation or other protected class or characteristic** established under applicable federal, state or local statute or ordinance while the Insured is performing duties related to the conduct of the Organization's business. **This definition does not include any Claim which in whole or part involves an allegation(s) of Patient Molestation**.
*            *            *

---

[1] The Policy Coverage Form also includes "Third Party Harassment" in the definition of "Wrongful Act," but that coverage was removed by endorsement. Policy, Third Party Harassment Exclusion Endorsement.

> **"Workplace Tort" means any actual or alleged employment-related**:
> (1) misrepresentation**;** or
> (2) **negligent supervision, training or evaluation**; or
> (3) wrongful discipline; or
> (4) wrongful deprivation of a career opportunity; or
> (5) failure to enforce written policies and procedures relating to a Wrongful Act.

Policy, Coverage A §§ III(S), (U), Coverage Form at 3-4 (emphasis added).

The Policy further provides that "Third Party Discrimination does not include Third Party Harassment." Policy, Third Party Harassment Exclusion Endorsement (emphasis omitted).

The Policy's employment practices liability coverage also contains the following exclusion:

> The Company shall not be liable to make payment for Loss or Defense Costs (except where otherwise noted) in connection with any Claim made against the Insured arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:
> 
> \*　　　\*　　　\*
> 
> (14) Any Claim arising or resulting directly or indirectly from Patient Molestation.

Policy Coverage A § IV(A)(14), Coverage Form at 4-5 (emphasis omitted).

The Policy defines "Patient Molestation" as follows:

> "Patient Molestation" means bodily injury, sickness, disease or death, mental anguish, pain and suffering, emotional trauma, or similar emotional injury arising out of improper physical contact of a sexual nature with a patient of the Organization.

Policy, Definition of Patient Molestation Clarification Endorsement ¶1 (emphasis omitted).

On February 27, 2019, Insured reported the Underlying Action to Insurer. Insured's Amended Complaint ¶13. On April 22, 2019, Insurer notified Insured that "there is no coverage, either defense or indemnification, under the Policy for the [Underlying Action]" because the plaintiffs in the Underlying Action were not employees or former employees of Insured and the Underlying Action did not assert a third-party discrimination claim and, in addition, because any coverage would be excluded by the patient molestation exclusion. *Id.* ¶21 & Ex. C at 1, 4-5.

On December 9, 2019, Insured filed the instant action against Insurer. Insurer filed preliminary objections and Insured, in response, filed an amended complaint. In its amended complaint, Insured asserted that it was entitled to coverage for the Underlying Action on the ground that the Underlying Action alleged negligent hiring, negligent supervision, and violation of HIPAA and that these allegations fell within the Policy's coverage of "Workplace Tort" and "Third Party Discrimination" claims. Insured's Amended Complaint ¶¶15-18, 23-28, 32-34, 48-52. Insured asserted both claims for declaratory judgments that Insurer was obligated to defend and indemnify it in the Underlying Action and claims for bad faith denial of coverage and breach of contract. *Id.* ¶¶19-71.

Insurer filed preliminary objections in the nature of a demurrer to Insured's amended complaint, asserting that none of Insured's claims stated a cause of action because the Policy's coverage for "Workplace Tort" is limited

to claims brought by employees, former employees and applicants for employment and there was no "Third Party Discrimination" claim in the Underlying Action, and because coverage was excluded by the patient molestation exclusion. On June 17, 2020, the trial court sustained Insurer's preliminary objections and dismissed the action in its entirety on the ground that the Policy did not provide coverage for the Underlying Action since the plaintiffs in the Underlying Action were not employees, former employees or employment applicants and the Underlying Action asserted no discrimination claim. Trial Court Opinion at 4-7.

Insured timely appealed. Insured raises three issues in this appeal: 1) whether the trial court erred in holding that the Policy's "Workplace Tort" coverage was limited to claims by employees, former employees or employment applicants; 2) whether the trial court erred in holding that the Underlying Action's HIPAA claim was not a "Third Party Discrimination" claim; and 3) whether the trial court's dismissal of the action can be sustained on the alternative ground that the patient molestation exclusion excludes coverage. We conclude that the trial court correctly held that the Policy's "Workplace Tort" or "Third Party Discrimination" provisions do not provide coverage for any of the claims in the Underlying Action and therefore do not

reach the issue of whether coverage is barred by the patient molestation exclusion.[2]

On an appeal from an order sustaining preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary. *Hospital & Healthsystem Association of Pennsylvania v. Department of Public Welfare*, 888 A.2d 601, 607 n.12 (Pa. 2005); *Frank v. TeWinkle*, 45 A.3d 434, 438 (Pa. Super. 2012). "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." *Estate of O'Connell v. Progressive Insurance Co.*, 79 A.3d 1134, 1137 (Pa. Super. 2013). In determining whether a demurrer was properly sustained, this Court must accept as true all well-pleaded material

_____

[2] Under the Pennsylvania Supreme Court's decision in *Vale Chemical Co. v. Hartford Accident & Indemnity Co.*, 516 A.2d 684 (Pa. 1986), where a declaratory judgment is sought concerning liability coverage for a tort action, the plaintiffs in the tort action are indispensable parties and failure to join them deprives the court of jurisdiction to issue a declaratory judgment. Although Insured sought declaratory relief, neither plaintiff in the Underlying Action was named as a party. We conclude, however, that this did not divest the trial court of jurisdiction to issue the order that is before us. The requirement that the tort plaintiffs be joined is a requirement for declaratory relief only, as it is based on the fact that the Declaratory Judgment Act requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." 42 Pa.C.S. § 7540(a); *Vale Chemical Co.*, 516 A.2d at 686-88. Here, two of Insured's claims, its bad faith claim and its breach of contract claim, did not seek declaratory relief and were not subject to the requirements of the Declaratory Judgment Act. The absence of the tort plaintiffs therefore had no effect on the trial court's jurisdiction over those claims. Moreover, the trial court did not issue a declaratory judgment in favor of any party; rather it sustained Insurer's demurrer and dismissed the action.

averments of fact in the complaint and every inference that is reasonably deducible from those facts. **Hudson v. Pennsylvania Board of Probation and Parole**, 204 A.3d 392, 395 (Pa. 2019); **O'Connell**, 79 A.3d at 1137; **Frank**, 45 A.3d at 438. The Court, however, is not required to accept as true conclusions of law, unwarranted inferences, or argumentative allegations. **Hudson**, 204 A.3d at 395; **Conrad v. City of Pittsburgh**, 218 A.2d 906, 907 n.3 (Pa. 1966). If a claim is based on a document, it is the document, not averments in the plaintiff's complaint characterizing it, that determine whether the plaintiff has stated a cause of action, and averments that conflict with the document need not be accepted as true. **Jenkins v. County of Schuylkill**, 658 A.2d 380, 383 (Pa. Super. 1995); **Framlau Corp. v. Delaware County**, 299 A.2d 335, 338 (Pa. Super. 1972).

The interpretation of an insurance policy is an issue of law over which this Court exercises plenary, *de novo* review. **Donegal Mutual Insurance Co. v. Baumhammers**, 938 A.2d 286, 290 (Pa. 2007); **Kiely v. Philadelphia Contributionship Insurance Co.**, 206 A.3d 1140, 1145 (Pa. Super. 2019). In determining whether an insurance policy provides coverage for a suit brought against the insured, a court must compare the terms of the insurance policy to the allegations of the complaint filed against the insured. **American and Foreign Insurance Co. v. Jerry's Sport Center, Inc**., 2 A.3d 526, 541 (Pa. 2010); **Pennsylvania Manufacturers Indemnity Co. v.**

*Pottstown Industrial Complex LP*, 215 A.3d 1010, 1014 (Pa. Super. 2019); *Kiely*, 206 A.3d at 1146.

The burden is on the insured to show that the claim is within the policy's coverage. *Erie Insurance Group v. Catania*, 95 A.3d 320, 322 (Pa. Super. 2014); *O'Connell*, 79 A.3d at 1138. Where coverage is denied based on an exclusion, however, the burden is on the insurer to prove the applicability of the exclusion. *Nationwide Mutual Insurance Co. v. Arnold*, 214 A.3d 688, 695, 701-02 (Pa. Super. 2019); *Catania*, 95 A.3d at 322-23. If a complaint against the insured pleads facts that are potentially within the scope of the policy's coverage, the insurer has a duty to defend the action until all covered claims are removed from the action. *Jerry's Sport Center*, 2 A.3d at 541-42; *Kiely*, 206 A.3d at 1146.

In determining whether the complaint pleads facts potentially within a policy's coverage, we are guided by the following additional principles. Where the policy provisions are clear and unambiguous, the courts must give effect to the policy's language. *Baumhammers*, 938 A.2d at 290; *Pottstown Industrial Complex*, 215 A.3d at 1015; *Allstate Fire and Casualty Insurance Co. v. Hymes,* 29 A.3d 1169, 1172 (Pa. Super. 2011). "[C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy." *Swarner v. Mutual Benefit Group*, 72 A.3d 641, 645 (Pa. Super. 2013) (quoting *Hymes*). In determining the meaning of policy terms, the court must

consider the language of the policy in its entirety. *Kurach v. Truck Insurance Exchange*, 235 A.3d 1106, 1116 (Pa. 2020); *State Farm Mutual Automobile Insurance Co. v. Dooner*, 189 A.3d 479, 482 (Pa. Super. 2018).

Policy provisions that are ambiguous must be construed in favor of the insured. *Baumhammers*, 938 A.2d at 290; *Pottstown Industrial Complex*, 215 A.3d at 1015; *Swarner*, 72 A.3d at 645. Policy provisions are ambiguous, however, only if they are reasonably susceptible of more than one construction. *Swarner*, 72 A.3d at 645; *Tuscarora Wayne Mutual Insurance Co. v. Kadlubosky,* 889 A.2d 557, 561-62 (Pa. Super. 2005). The fact that the parties disagree on the proper construction of policy language does not make it ambiguous. *Dooner*, 189 A.3d at 482; *Brown v. Everett Cash Mutual Insurance Co.*, 157 A.3d 958, 962 (Pa. Super. 2017); *Kadlubosky,* 889 A.2d at 561. Courts should interpret insurance policy provisions to avoid ambiguities, if possible. *Dooner*, 189 A.3d at 482-83; *Brown*, 157 A.3d at 962; *Kadlubosky,* 889 A.2d at 562. "A court cannot 'torture the [policy] language' to create ambiguities where none exist." *Swarner*, 72 A.3d at 645 (quoting *Ryan Homes, Inc. v. Home Indemnity Co.*, 647 A.2d 939 (Pa. Super. 1994)) (brackets in original); *see also Kadlubosky,* 889 A.2d at 562.

In its first issue, Insured argues that the claims in the Underlying Action for negligent hiring and negligent supervision fall within the Policy's definition

of "Workplace Tort" and are therefore "Wrongful Acts" for which the Policy provides coverage.[3] The trial court correctly rejected this argument because the Policy's definitions of both "Workplace Tort" and "Wrongful Act" unambiguously limit coverage to claims arising out of an employment or prospective employment relationship.

Contrary to Insured's contentions, the negligent hiring and negligent supervision claims in the Underlying Action do not fall within the Policy's definition of "Workplace Tort." The Policy does not include negligent hiring in the definition of "Workplace Tort" or "Wrongful Act" at all. Policy, Coverage A §§ III(U), (V), Coverage Form at 3-4. The Policy does include negligent

---

[3] Insured also argues in this appeal that the misrepresentation claims in the Underlying Action are "Wrongful Acts" under the Policy. Insured did not allege in its amended complaint or argue in the trial court that the misrepresentation claims in the Underlying Action were covered by the Policy. This coverage claim is therefore waived. It, however, does not raise any additional issues concerning the Policy language beyond those concerning coverage for negligent supervision, as both misrepresentation and negligent supervision are under the definition of "Workplace Tort." Accordingly, even if it were not waived, it would fail for the same reasons that we hold that the negligent supervision claim is not covered by the Policy. Insured does not contend that the Policy provides coverage for the Underlying Action on the ground that it asserts claims of harassment. Although the Policy's definition of "Wrongful Act" coverage includes harassment, Policy, Coverage A § III (V)(2), Coverage Form at 4, the harassment claims in the Underlying Action are clearly not covered because the Policy's definition of harassment limits coverage to employee claims. *Id.* § III(H), Coverage Form at 2 (defining "Harassment" as sexual or other harassment that is "made a condition of employment, that is "used as a basis for employment decisions," or that "creates a work environment that is hostile, intimidating or offensive or that otherwise interferes with performance").

supervision in its definition of "Workplace Tort."  Policy, Coverage A § III(U)(2), Coverage Form at 3.  The definition of "Workplace Tort," however, expressly restricts coverage to "employment-related" claims.  *Id.* § III(U), Coverage Form at 3 ("'Workplace Tort' means **any actual or alleged employment-related**: … (2) negligent supervision, training or evaluation …") (emphasis added).

Insured argues that all negligent supervision claims are employment-related even if they are brought by non-employees.  That contention cannot be accepted because it would make the language "employment-related" surplusage with respect to almost all of the items listed as "Workplace Torts."  In interpreting an insurance policy, the courts are to give effect to all of the policy's language and not treat any provisions as mere surplusage.  *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 276 (Pa. Super. 2014); *Millers Capital Insurance Co. v. Gambone Brothers Development Co.*, 941 A.2d 706, 715 (Pa. Super. 2007).  Insured also argues that negligent supervision claims can only be third-party claims.  That assertion is inaccurate.  While negligent supervision can be a theory on which liability to third parties is based, it could also be the subject of a claim by an employee, as negligent supervision of other employees could cause harm to an employee.  In addition, the coverage is for "negligent supervision, training or evaluation," Policy, Coverage A § III(U)(2), Coverage Form at 3, not negligent supervision and hiring, and

providing inadequate or improper supervision, training, and evaluation to an employee could harm that employee in his or her employment.

Furthermore, the Policy's definition of "Wrongful Act" expressly limits coverage of "Workplace Tort" claims, and all other claims except for "Third Party Discrimination," to claims for acts "committed or allegedly committed by the Organization or by an Individual Insured acting solely within his/her capacity as such **involving and brought by any Employee, former Employee, or applicant for employment with the Organization**." Policy, Coverage A § III (V), Coverage Form at 4 (emphasis added). The claims in the Underlying Action are not claims brought by an employee, former employee, or job applicant.

Insured argues that because the language "involving and brought by any Employee, former Employee, or applicant for employment" immediately follows the words "Individual Insured acting solely within his/her capacity as such" and because there is no comma before it, the requirement that the claim be brought by an employee, former employee, or applicant applies only to individual insureds and not to Insured itself or that it could reasonably be interpreted as applying only to individual insureds.[4] We do not agree.

_____

[4] Insurer contends that this argument was waived because Insured did not make any argument in the trial court based on the position or punctuation of the language "involving and brought by any Employee, former Employee, or applicant for employment." While Insured did not make this grammatical structure argument below, Insured did argue to the trial court that coverage

*(Footnote Continued Next Page)*

Under the "last antecedent" rule of construction, qualifying words and phrases generally are interpreted as referring only to the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence where no contrary intention appears. *Commonwealth v. Rosenbloom Finance Corp.*, 325 A.2d 907, 909 (Pa. 1974); *Buntz v. General American Life Insurance Co.*, 7 A.2d 93, 95 (Pa. Super. 1939); *Summit Township Industrial and Economic Development Authority v. County of Erie,* 980 A.2d 191, 208 (Pa. Cmwlth. 2009) (*en banc*). This rule, however, does not limit a qualifying phrase to the last item or make the document ambiguous, even where there is no comma before the qualifying phrase, where it is clear from the document as a whole that the phrase in question was intended to apply to all of the items that are listed before the qualifying phrase. *Rosenbloom Finance Corp.*, 325 A.2d at 909-10; *Summit Township Industrial and Economic Development Authority,* 980 A.2d at 207-10. "When several words are followed by a modifying phrase which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the modifying phrase be read as applicable to all." *Rosenbloom Finance Corp.*, 325 A.2d at 909

---

for "Workplace Tort" was not limited to claims by employees, former employees, and employment applicants. Moreover, the fact that the trial court did not evaluate the grammatical argument does not impair this Court's review as the interpretation of the Policy is a question of law that this Court reviews *de novo*. We therefore do not find this argument barred by waiver.

(quoting ***Porto Rico Railway, Light & Power Co. v. Mor***, 253 U.S. 345 (1920)) (parentheses omitted).

Here, applying the phrase "involving and brought by any Employee, former Employee, or applicant for employment" to claims against both the insured entity and individual insureds is a normal grammatical reading of the Policy's language. Moreover, the intent that the phrase apply to both the insured entity and individual insureds is demonstrated by the language of the Policy as a whole. The Policy repeatedly and consistently requires that covered claims other than those bearing the label "Third Party" be employment related. Policy, Coverage A §§ III(E), (H), (P), (U), (W), Coverage Form at 1-4. If the intent was to cover claims against the insured entity regardless of whether they were brought by an employee or former or prospective employee and restrict only coverage of claims against individual insureds, there would be no reason for a category of "Third Party Discrimination" separate from "Discrimination" and the Policy could have simply restricted "Wrongful Act[s]" committed by individual insureds, other than discrimination, to those involving and brought by employees, former employees, or applicants. None of the cases cited by Insured in support of its last antecedent argument involves Pennsylvania law, insurance coverage, or language similar to that at issue here.

In addition, there is no apparent reason in the structure or purpose of the Policy for limiting only individual insureds' coverage. The language

- 16 -

"Individual Insured acting solely within his/her capacity as such" restricts coverage for individuals to their work-related acts; the language "involving and brought by any Employee, former Employee, or applicant for employment" restricts the type of suit that is covered by the Policy, not whether the individual insured's act was work-related. The inclusion, in the definition of "Wrongful Act," of coverage for assertions against individual insureds based on their status in the insured entity, Policy, Coverage A § III(V), Coverage Form at 4 ("or asserted by any Employee, former Employee or applicant for employment with the Organization against an Individual Insured because of his/her status as such"), does not indicate any intent to provide coverage of non-employee claims against the insured entity. The apparent reason for this additional clause for individual insureds would be to provide coverage for claims that the individuals are liable based on their status for acts they are not claimed to have committed; no equivalent language is necessary for the insured entity because its agents' acts are its acts.

Our conclusion that the Policy does not cover negligent supervision and other "Workplace Tort" claims brought by plaintiffs with no present, past, or prospective employment relationship with Insured is also supported by case law throughout the country interpreting employment liability insurance policies. While our courts have not previously addressed this issue, decisions of other courts have repeatedly held that employment practices liability insurance covers only claims of employees, former employees, and job

applicants, except to the extent that the policy expressly provides third-party or non-employment-related coverage for a particular type of claim. *See, e.g., McCalla Corp. v. Certain Underwriters at Lloyd's, London*, 2014 WL 1745647 at *4 (D. Kan. No. 13–1317–SAC filed May 1, 2014) (construing employment practices liability (EPL) policy language covering "wrongful failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures" to provide coverage for a claim filed by a party with no employment relationship to the insured "would defeat the purpose of EPL coverage, which is necessarily limited to enumerated acts claimed by employees, former employees and prospective employees"); *Carolina Casualty Insurance Co. v. Red Coats, Inc.*, 2014 WL 11428185 at *3-*4 (N.D. Fla. No. 1:12-cv-00232-MP-GRJ filed Apr. 22, 2014) (employment practices liability insurance policy's coverage for "negligent retention, negligent supervision, and negligent hiring" did not cover claim by non-employee), *aff'd on this issue*, 624 Fed.Appx. 992, 994-95 (11th Cir. 2015); *101 Ocean Condominium Homeowners Association v. Century Surety Co.*, 2009 WL 10698412 at *3-*4 (C.D. Cal. CV 09-01206 SVW (JCx) filed July 29,2009), *aff'd*, 407 Fed.Appx. 129, 132 (9th Cir. 2010); *General Star Indemnity Co. v. Virgin Islands Port Authority*, 2007 WL 185122, at *3-*4 (D.V.I. No. 2001–188 filed Jan. 5, 2007); *Clarendon National Insurance Co. v. City of York*, 290 F. Supp. 2d 500, 506 (M.D. Pa. 2003), *aff'd*, 121 Fed.Appx. 940 (3d Cir. 2005).

Insured contends in its second issue that it is entitled to coverage for the Underlying Action under the Policy's coverage of "Third Party Discrimination" claims. This argument likewise fails.

The Policy includes "Third Party Discrimination" in the definition of "Wrongful Act" without the qualification "involving and brought by any Employee, former Employee, or applicant for employment." Policy, Coverage A § III(V), Coverage Form at 4. The fact that neither plaintiff in the Underlying Action had any employment relationship with Insured would therefore not preclude coverage of such a claim.

The Underlying Action, however, does not assert any claim of "Third Party Discrimination." The Policy defines "Third Party Discrimination" as "**discrimination** by an Insured in their capacity as such against a Third Party **based on** such Third Party's **race, religion, age, sex, disability, national origin, marital status, sexual orientation or other protected class or characteristic** established under applicable federal, state or local statute or ordinance." Policy, Coverage A § III(S), Coverage Form at 3 (emphasis added). The complaint in the Underlying Action does not make any allegations that Insured's or the therapist's actions toward the plaintiffs were based on race, religion, age, gender, disability, national origin, marital status, sexual orientation or any other group characteristic of any kind. Indeed, the complaint in the Underlying Action does not contain the words "discriminate" or "discrimination" at all.

Insured argues that plaintiff Madonna's negligence *per se* claim of sharing of confidential patient information in violation of HIPAA falls within the definition of "Third Party Discrimination" because HIPAA is an applicable federal statute that creates a protected class or characteristic. The Underlying Action, however, alleges only a violation of plaintiff Madonna's rights under HIPAA, not that she was harassed or treated differently because she was a patient or had rights protected by HIPAA. Madonna/Martorana First Amended Complaint ¶¶215-16.

Insured also argues that there is "Third Party Discrimination" coverage because the Underlying Action plaintiffs are members of a protected class, women, and were discriminated against by the HIPAA violation. This argument too is without merit. The Underlying Action does not allege that any plaintiff's HIPAA rights were violated because they were female or that their status as women had any connection to the HIPAA violation.

Insured does not argue and did not allege in its complaint that any claim in the Underlying Action, other than the HIPAA violation, falls within the Policy's "Third Party Discrimination" coverage. Appellant's Br. at 14, 21-22; Insured's Amended Complaint ¶¶33-34, 51-52. Moreover, even if the allegations of the Underlying Action were characterized as involving sex discrimination because the therapist assaulted only women (an allegation that is absent from the complaint in the Underlying Action), that could not constitute a claim of "Third Party Discrimination" under the Policy because the

definition of "Third Party Discrimination" specifically excludes such claims. The Policy's definition of "Third Party Discrimination" provides both that it "does not include any Claim which in whole or part involves an allegation(s) of Patient Molestation" and that "Third Party Discrimination does not include Third Party Harassment." Policy, Coverage A § III(S), Coverage Form at 3 & Third Party Harassment Exclusion Endorsement (emphasis omitted). The Policy defines "Third Party Harassment" as including "[s]exual harassment including any unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature against a Third Party." Policy, Coverage A § III(T)(2), Coverage Form at 3. The Policy does not cover "Third Party Harassment." Policy, Third Party Harassment Exclusion Endorsement.

Because the trial court correctly held that none of the claims in the Underlying Action are "Wrongful Acts" covered by the Policy, we affirm its order sustaining Insurer's demurrer.[5]

---

[5] Insured argues in its third issue that there is a factual dispute as to whether Insured had coverage for patient molestation claims under Coverage B in the Coverage Form that is part of the Policy. Coverage B of the Coverage Form sets forth a coverage for "Defense Costs … that the Insured shall become legally obligated to pay because of Claims … for Patient Molestation or Claims which in whole or part involve an allegation(s) of Patient Molestation," but provides no coverage for indemnity. Policy, Coverage Form at 6 (emphasis omitted). The Policy's declarations page, however, states under the Coverage B heading: "NOT COVERED." Policy, Declarations. Insured asserts its third issue only as an argument that the trial court's decision cannot be sustained on an alternative ground, not as a ground for reversal. We note, moreover, that any issues of fact concerning whether Coverage B was part of the Policy cannot constitute a ground for reversal of the trial court's dismissal of
*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/17/2021

---

Insured's action and are irrelevant to this appeal because Insured did not assert any claim under Coverage B in its complaint. Rather, Insured's complaint asserted coverage for the Underlying Action solely under Coverage A and its coverage for "Workplace Tort" and "Third Party Discrimination" claims and specifically alleged that the claims against Insured in the Underlying Action "are not claims arising or resulting directly or indirectly from Patient Molestation." Insured's Amended Complaint ¶¶23-28, 31, 33-34, 48-52. We therefore need not address Insured's third issue.