J-A25032-23

2024 PA Super 2

| WATCHWORD WORLDWIDE, A 501(C)(3) NON-PROFIT ENTITY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | |
| ERIE INSURANCE EXCHANGE | : | No. 1221 WDA 2022 |

Appeal from the Judgment Entered October 21, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-002791

| WATCHWORD WORLDWIDE, A 501(C)(3) NON-PROFIT ENTITY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| ERIE INSURANCE EXCHANGE | : | No. 1290 WDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered October 21, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-002791

BEFORE:  BOWES, J., KUNSELMAN, J., and COLINS, J.*

OPINION BY COLINS, J.:                    **FILED: January 9, 2024**

These matters are consolidated cross-appeals from an $88,750 judgment entered in favor of Watchword Worldwide (Watchword) and against Erie Insurance Exchange (Erie) in an insurance breach of contract and bad

_____

* Retired Senior Judge assigned to the Superior Court.

faith case following trial. For the reasons set forth below, we vacate the judgment on the ground that Erie was entitled to judgment in its favor as a matter of law on both the breach of contract and bad faith claims.

This case arises out of an insurance claim for loss of electronic data as a result of a computer hacking incident. Watchword, a 501(c)(3) non-profit entity, produces videos of the New Testament of the Bible. Trial Court Opinion, 3/14/23, at 1; N.T. Trial at 132-33. Watchword sold its videos and transmitted them to its customers' iPhones through a server owned and operated by GoDaddy, Inc. (GoDaddy) and a server owned and operated by Apple Inc. (Apple). Trial Court Opinion, 3/14/23, at 1-2; N.T. Trial at 133-36. This process required both a mobile application that customers used to order and pay for the videos and an application programing interface (API) that authenticated the sale and delivered the video. N.T. Trial at 133-36, 212. Watchword's videos and API were stored on the GoDaddy server. *Id.* at 135-36, 151-52, 170, 211-12. The mobile application was on the Apple server. *Id.* at 134, 177, 181. Watchword paid GoDaddy a license fee to use the GoDaddy server or leased an account on that server, but the server was owned by GoDaddy and not by Watchword. *Id.* at 170, 151-52, 298, 304-05.

In early April 2017, Watchword discovered that an unknown hacker had deleted Watchword's videos and API from the GoDaddy server. N.T. Trial at 183-84, 189-90. No electronic data was deleted from any computer owned by Watchword. *Id.* at 183-84, 303. Watchword had copies of the videos that

were unaffected by the hack of the GoDaddy server, and Truefit Solutions (Truefit), Watchword's consultant that had developed the video dissemination system for Watchword, had a copy of the API. *Id.* at 136-37, 172, 195, 213. The mobile application on Apple's server was not damaged by the hack of the GoDaddy server. *Id.* at 183-85, 189. On May 7, 2017, Watchword, however, removed the mobile application from Apple's server to prevent adverse reactions from customers and Apple because the mobile application could not work without the videos and API on the GoDaddy server. *Id.* at 137-38, 154-55, 191-92.

At the time that the videos and API were deleted from the GoDaddy server, Watchword was insured by Erie under a property damage and liability insurance policy that included coverage for the reproduction or replacement of electronic data. N.T. Trial at 354-56; Erie Insurance Policy Q970967190 (the Policy), Commercial Property Coverage Part at 11 § IV(C)(2). The Policy provided with respect to electronic data coverage:

> **We will cover the expenses incurred to reproduce or replace your "electronic data" when destruction or corruption is caused by a peril insured against including loss by theft.** This includes your "electronic data" that is destroyed or corrupted by magnetic injury, "accident", "electronic circuitry impairment", virus, harmful code, or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupts its normal operation.
> **Coverage is limited to "electronic data" which is owned by you, licensed or leased to you, originates and resides in your computers, and is used in the e-commerce activity of your business.**

> > \*       \*       \*

> "Loss" or damage to "electronic data" will be valued at the cost of reproduction or replacement including the cost of data entry, re-programming, and computer consultation services. But we will not pay the cost to duplicate research that led to the development of your "electronic data".
> To the extent that "electronic data" is not reproduced or replaced, the "loss" will be valued at the cost of replacement of the "media" on which "electronic data" was stored, with blank "media" of substantially identical type.

> > \*       \*       \*

> "Media" means materials on which "electronic data" are recorded, such as magnetic tapes, disc packs, paper tapes, and cards.
> **We will pay for the expenses incurred in the reproduction or replacement of your "electronic data" which is in excess of the deductible amount shown in the "Declarations".**

Policy, Commercial Property Coverage Part at 11 § IV(C)(2) (emphasis added). The Policy declarations set forth a deductible of $2,500. ***Id.***, Declarations at 1. The Policy also contains an exclusion that excludes from coverage electronic data "which cannot be replaced with the same kind or quality." ***Id.***, Commercial Property Coverage Part at 12 § IV(C)(4). Although the electronic data reproduction or replacement section of the Policy contained a coverage limit of $25,000, ***id.***, Commercial Property Coverage Part at 11 § IV(C)(2), the Policy contained an endorsement that provided up to a total of $250,000 in coverage for expenses of reproduction or replacement of electronic data, damage to electronic data processing equipment, and a number of other types of business losses. ***Id.***, Office Enhancements Endorsement Commercial Property Coverage Part at 1 § B.

On July 17, 2017, Watchword filed a claim with Erie for the loss caused by the deletion of its electronic data from the GoDaddy server. N.T. Trial at

- 4 -

84. Erie denied Watchword's claim on the grounds, *inter alia*, that the Policy did not cover the loss because the electronic data that was destroyed was not on Watchword's computers and on the ground that the cost of replacing the videos on the GoDaddy server from the copies that Watchword still had was less than the $2,500 deductible. *Id.* at 121-23, 248-50, 253-56.

On February 22, 2019, Watchword filed this action against Erie. In its complaint, Watchword asserted claims for breach of contract for the failure to pay its claim for the cost of replacing electronic data, bad faith denial of its claim, and violation of the Uniform Trade Practices and Consumer Protection Law (UTPCPL). Amended Complaint ¶¶14-35. Erie in its answer denied that the Policy covered Watchword's loss, denied that it breached the insurance contract, and denied that it acted in bad faith. Answer and New Matter ¶¶14-21, 24-30, 48-59. Following discovery, Erie filed a motion for summary judgment seeking judgment in its favor on all of Watchword's claims. On June 8, 2020, the court granted the motion with respect to Watchword's UTPCPL claim and dismissed that claim with prejudice but denied summary judgment on the breach of contract and bad faith claims. Trial Court Order, 6/8/20.

Watchword's breach of contract claim was tried to a jury from September 15 to 21, 2021. At trial, Watchword claimed damages of $168,000. N.T. Trial at 156. These damages were based on the cost of creating a new mobile application, upgraded to the standards required by Apple to put it on Apple's server after the original mobile application had been

deleted, and upgrading the videos. *Id.* at 156, 159-60, 172-73, 179, 181. Watchword admitted that the mobile application on Apple's server would have worked properly and would not have had to be removed if Watchword had put the videos and API back on the GoDaddy server from the copies that it had of those items. *Id.* at 193-94. Watchword also admitted that it did not attempt to have the videos and API put back on the GoDaddy server. *Id.* at 194-95. Truefit's CEO, called by Watchword as a damages witness, testified that the cost of having the videos and API put back on the GoDaddy server would have been $1,500 to $2,500 if Watchword had hired it to do so in 2017 and that the cost of restoring Watchword's system with the upgrades required by Apple at the time of the 2021 trial was $10,000 to $20,000. *Id.* at 213-14, 221-22. Erie moved for a compulsory nonsuit at the end of Watchword's case and for a directed verdict at end of trial on the grounds, *inter alia*, that there was no coverage for Watchword's loss because the electronic data that was deleted was not on a Watchword computer and that the amount of loss payable did not exceed the deductible. *Id.* at 313-18, 373. Both motions were denied by the trial court. *Id.* at 319, 374.

The jury returned a verdict in favor of Watchword, finding that Erie had breached the insurance contract and awarding Watchword $18,750 in damages. N.T. Trial at 454-55; Verdict Slip. Erie filed a post-trial motion seeking judgment notwithstanding the verdict (JNOV) on the same grounds as it sought a compulsory nonsuit and directed verdict, including the grounds

that there was no coverage for Watchword's loss because the electronic data that was deleted was not on a Watchword computer and that the amount of loss payable under the Policy did not exceed the deductible, and seeking in the alternative a new trial. On November 16, 2021, the trial court entered an order denying Erie's post-trial motion.

A nonjury trial of Watchword's bad faith claim was scheduled for February 2022. Prior to the date of that trial, the parties agreed to proceed by argument based on the trial evidence and written submissions, and on February 16, 2022, the parties presented argument to the trial court on the bad faith claim. N.T. Bad Faith Hearing at 2-3. The only additional testimony at this bad faith hearing was brief testimony of Watchword's CEO concerning its compensatory damages that added nothing concerning Erie's conduct in denying coverage. *Id.* at 133-46. On June 30, 2022, the trial court issued its nonjury verdict on the bad faith claim, finding that Erie acted in bad faith because it denied coverage on the ground that the GoDaddy server was not on Watchword's property and because Erie relied on Truefit, rather than Watchword, in evaluating what had been deleted from the GoDaddy server. Memorandum and Verdict of the Court at 2-3; Non-Jury Verdict. Based on these bad faith findings, the trial court awarded Watchword $20,000 in punitive damages and $50,000 in attorney fees and costs. Memorandum and Verdict of the Court at 3; Non-Jury Verdict. Both parties filed post-trial motions with respect to the bad faith verdict. The trial court denied both

parties' post-trial motions on September 30, 2022, and judgment was entered against Erie on the verdicts in the amount of $88,750 on October 21, 2022. Both parties filed timely appeals from this judgment.

Erie argues in its appeal (1) that it was entitled to JNOV on Watchword's breach of contract claim on the ground that there was no coverage for Watchword's loss because the videos and API that were deleted were not on a Watchword computer; (2) that it was entitled to JNOV on the breach of contract claim on the ground that the amount of loss payable under the Policy did not exceed the deductible; and (3) that it was entitled to JNOV on the bad faith claim on the ground that that it had a reasonable basis for failing to pay the claim. Watchword in its appeal asserts that the punitive damages award and attorney fees and costs award on its bad faith claim were inadequate.[1] We address Erie's arguments first because, if Erie was entitled to JNOV on Watchword's bad faith claim, Watchword's challenges to the amounts awarded on that claim are moot.

Whether the trial court erred in denying Erie's motions for JNOV is a question of law subject to our plenary review. **Shamnoski v. PG Energy**, 858 A.2d 589, 593 (Pa. 2004). There are two bases on which JNOV may be

_____

[1] Watchword also makes arguments that the trial court did not adequately address its bad faith claims. These arguments, however, are not a separate issue. Instead, they are relevant to these appeals as a response to Erie's challenge to the bad faith verdict and as support for Watchword's challenges to the amount of the bad faith awards.

granted: (1) where the movant is entitled to judgment as a matter of law and (2) where the evidence is such that no two reasonable minds could disagree that the judgment should have been in favor of the movant. *Linde v. Linde*, 220 A.3d 1119, 1140 (Pa. Super. 2019); *United Environmental Group, Inc. v. GKK McKnight, LP*, 176 A.3d 946, 959 (Pa. Super. 2017). In determining whether either of these bases for JNOV has been established, this Court must view the evidence in the light most favorable to the party that prevailed at trial. *Linde*, 220 A.3d at 1140.

Erie's first issue, that the Policy did not cover Watchword's loss of the videos and API, turns on the interpretation of the Policy's language. The interpretation of an insurance policy is an issue of law over which this Court's review is plenary and *de novo*. *Donegal Mutual Insurance Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007); *Penn Psychiatric Center, Inc v. United States Liability Insurance Co.*, 257 A.3d 1241, 1248 (Pa. Super. 2021). There is therefore no deference to the jury's verdict on this issue.

The burden is on the insured to show that its claim is within the policy's coverage. *Penn Psychiatric Center, Inc*, 257 A.3d at 1249; *Estate of O'Connell v. Progressive Insurance Co.*, 79 A.3d 1134, 1138 (Pa. Super. 2013). Where coverage is denied based on an exclusion, the burden is on the insurer to prove the applicability of the exclusion. *Penn Psychiatric Center, Inc*, 257 A.3d at 1249; *Erie Insurance Group v. Catania*, 95 A.3d 320,

322-23 (Pa. Super. 2014). Insurance policy provisions that are ambiguous must be construed in favor of the insured. **Baumhammers**, 938 A.2d at 290; **Swarner v. Mutual Benefit Group**, 72 A.3d 641, 645 (Pa. Super. 2013). An insurance policy provision is ambiguous, however, only if it is reasonably susceptible of more than one construction. **Penn Psychiatric Center, Inc**, 257 A.3d at 1249; **Swarner**, 72 A.3d at 645.

The Policy's insurance for reproduction or replacement of electronic data provides coverage only if the electronic data that was destroyed or corrupted "resides in your computers." Policy, Commercial Property Coverage Part at 11 § IV(C)(2). What this policy language covers is a question of first impression. The parties cite no case law interpreting this language in an insurance policy and there do not appear to be any court decisions in Pennsylvania or any other jurisdiction addressing the issue here.

The term "your computers" is not defined in the Policy. The term "your" clearly means the insured, which is Watchword. The Policy therefore clearly provides coverage only where the computer on which data is destroyed or corrupted is a Watchword computer. Watchword had computers of its own, an iPhone that it used in its sale of the Bible videos through the Apple application and production computers. N.T. Trial at 153, 300. No data on those computers was deleted or corrupted. **Id.** at 183-84, 303. Rather, the loss of electronic data for which Watchword claimed coverage was the deletion of Watchword's videos and API from the GoDaddy server by an unknown

hacker. *Id.* at 181-83, 189, 303. Watchword leased or had a license to use an account on that third-party computer, but the computer was operated by the third party, GoDaddy, not by Watchword. N.T. Trial at 151-52, 170, 298, 304-05.

The term "your computers" can reasonably be understood to mean the insured's own computers and not computers controlled and operated by third parties that the insured used under a license or lease. This construction is supported by the Policy's use of the terms "leased" and "licensed" in describing the electronic data that is covered and the omission of these terms when referring to the location where insured data must reside. Policy, Commercial Property Coverage Part at 11 § IV(C)(2) ("'electronic data' which is owned by you, licensed or leased to you [and] originates and resides in your computers").[2] Absent a definition of the term or case law interpreting this policy language, however, "your computers" could also reasonably be understood to encompass a computer that the insured used under license or

---

[2] Watchword's argument that its data on the GoDaddy server was clearly covered by the Policy because the evidence showed that the GoDaddy server was part of Watchword's "network" or "computer system network," N.T. Trial at 298, 351-52, is without merit. The Policy's coverage for reproduction or replacement of electronic data covers only electronic data residing in the insured's "computers," not electronic data residing in the insured's "network" or "computer system network," and uses terms "computers," "computer system," and "network," as distinct from each other, with "computer system" and "network" only used with respect to the source of the harm to the electronic data, not the location of the insured's electronic data that was deleted or damaged. Policy, Commercial Property Coverage Part at 11 § IV(C)(2).

lease, given the common understanding of "your" as sometimes including items that the person in question does not own but has a right to use and uses. We therefore conclude that term is ambiguous. Because the Policy is ambiguous, the term must be construed in favor of Watchword to provide coverage for Watchword's electronic data that was stored on the GoDaddy server. **Baumhammers**, 938 A.2d at 290; **Swarner**, 72 A.3d at 645. The trial court therefore did not err in holding that Erie was not entitled to JNOV on the ground that Watchword's loss was not covered by the Policy.[3]

In its second issue, Erie argues that Watchword did not prove that Erie's failure to pay Watchword's claim breached the insurance contract because the evidence at trial showed that the loss did not exceed the Policy's deductible. We agree.

The Policy provides that Erie will pay only for expenses for reproduction or replacement of electronic data that are in excess of the Policy's $2,500 deductible. Policy, Declarations at 1, Commercial Property Coverage Part at 11 § IV(C)(2). The evidence at trial was undisputed that that Watchword had

_____

[3] To the extent that Erie makes an additional argument that "your computers" cannot include the GoDaddy server because the Policy requires that the covered property be within 1,500 feet of Watchword's premises, Erie's Brief at 25-26, that argument is without merit. The sections of the Policy limiting coverage to loss of or damage to covered property on or "the premises described in the 'Declarations'" and "within 1,500 feet thereof" are other coverages provided in Section I of the Policy. Policy, Commercial Property Coverage Part at 1-3 § I(1)-(3). The coverage for electronic data is under a different section of the Policy, Section IV, and contains no such locational restriction. **Id.**, Commercial Property Coverage Part at 11 § IV(C)(2).

undamaged copies of the videos and API available to it that could have been reinstalled on the GoDaddy server after the deletions were discovered. N.T. Trial at 136-37, 171-72, 193, 195, 213, 221-22. Watchword's own evidence showed that the cost of replacing all of the deleted electronic data by using those copies to reinstall its videos and API on the GoDaddy server was $2,500 or less. *Id.* at 213, 222. The cost of reproduction or replacement of the electronic data that was deleted from GoDaddy server therefore did not exceed the Policy's deductible.

The only basis for Watchword's claim that its damages exceeded the $2,500 deductible is that the cost of replacing the mobile application on the Apple server after Watchword removed the existing mobile application and of upgrading it to the standards that Apple required for new mobile applications was $10,000 to $20,000. N.T. Trial at 155-56, 159-60, 214. This argument fails for two reasons.

First, while Watchword was justified in not simply leaving the non-functioning mobile application on the Apple server, it did not remove the application until May 7, 2017, a month after the loss of the videos and API was discovered, and it was undisputed that the problem could have been fixed without removing the mobile application by reinstalling the videos and API from the existing copies. N.T. Trial at 191-94. There was no basis on which the jury could find that the videos and API could not have been reinstalled on the GoDaddy server before May 7, 2017. Rather, Watchword admitted that it

made no attempt to even inquire about reinstalling the videos and API, and the only evidence introduced at trial as to the amount of time that reinstallation would have taken was testimony that the videos and API could have been completely reinstalled from the existing copies in "[a] matter of hours." *Id.* at 194, 343.

Second, the Policy does not cover the cost of upgrading lost or damaged electronic data, as it specifically excludes from coverage electronic data "which cannot be replaced with the same kind or quality." Policy, Commercial Property Coverage Part at 12 § IV(C)(4). The only costs that exceeded the deductible were for an upgraded mobile application and upgraded videos, not for replacement of the same quality videos, API, or mobile application. N.T. Trial at 155-56, 159-60, 214.

Because Watchword's own evidence established that the cost of replacing its lost electronic data, the videos and API, did not exceed the Policy's $2,500 deductible, Erie's failure to pay Watchword's claim did not breach Erie's obligations under the Policy. Policy, Commercial Property Coverage Part at 11 § IV(C)(2). Erie was therefore entitled to JNOV on Watchword's breach of contract claim.

In its remaining issue, Erie argues that it was entitled to judgment in its favor on Watchword's bad faith claim. This issue likewise merits relief.

An insurance bad faith claim is a statutory cause of action under Section 8371 of Pennsylvania Judicial Code, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. To prevail on a bad faith claim under Section 8371, the plaintiff must prove two elements: (1) that the insurer did not have a reasonable basis for denying the claim for benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Rancosky v. Washington National Insurance Co.*, 170 A.3d 364, 365, 377 (Pa. 2017); *Wenk v. State Farm Fire & Casualty Co.*, 228 A.3d 540, 547-58 (Pa. Super. 2020); *Terletsky v. Prudential Property & Casualty Insurance Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). The plaintiff must prove both of these elements by clear and convincing evidence. *Rancosky*, 170 A.3d at 377; *Wenk*, 228 A.3d at 547-58; *Terletsky.* 649 A.2d at 688. Even if a denial of coverage is erroneous, bad faith cannot be shown if the insurer denied coverage based on an interpretation of the policy language that is consistent with policy language and the law on the question is unclear. *J.H. France Refractories Co. v. Allstate Insurance Co.*, 626 A.2d 502, 510 (Pa. 1993) (no bad faith where law on coverage issue was unclear and competing coverage positions were reasonable); *Terletsky.* 649 A.2d at 690 (no bad faith based on failure to allow stacking of uninsured motorist policies where law on stacking was unclear at the time).

Here, the trial court found that Erie acted in bad faith in two respects, that its conclusion that there was no coverage because the GoDaddy server was not on Watchword's property was unreasonable and that Erie acted unreasonably in concluding that only videos and no API had been deleted from the GoDaddy server. Memorandum and Verdict of the Court at 2-3. Denial of coverage based solely on the physical location of the GoDaddy server (as opposed to the fact that it was not Watchword's computer) could be found unreasonable because, as discussed in footnote 3 above, the provisions concerning location of the damaged property are not applicable to the electronic data coverage. Although Erie's conclusion that no API had been lost was based on information obtained and confirmed from Watchword's consultant Truefit that developed the API and Truefit did not correct that erroneous information for more than two years, N.T. Trial at 206, 219-21, Erie knew that Watchword was contending that the API had been deleted and also did not change its coverage position after Truefit corrected the misinformation. Watchword argues that other actions by Erie that the trial court did not find (quoting a lower $25,000 coverage limit, presenting allegedly inaccurate testimony at trial, and setting allegedly arbitrary reserve limits) also constituted bad faith.

None of these findings or contentions, however, can show that Erie had no reasonable basis for denying benefits under the Policy, let alone show lack of a reasonable basis by clear and convincing evidence. Whatever other

statements it made or conclusions it reached, Erie denied payment of Watchword's claim on the ground that there was no coverage because the Policy required that the destroyed or corrupted electronic data "resides in your computers" and the deleted electronic data was on a GoDaddy computer and on the ground that the loss, even if covered, did not exceed the deductible. N.T. Trial at 121-23, 248-51, 253-56. Both of those grounds were reasonable grounds for denying Watchword's claim.

While we have concluded that Watchword's videos and API on the GoDaddy server fall within the Policy's coverage because the term "your computers" is ambiguous, the conclusion that "your computers" is limited to Watchword's own computers was a reasonable interpretation of the Policy, as it is supported by the Policy language and there was no decisional law contrary to that interpretation. Because it was reasonable, even though erroneous, this ground for denial of Watchword's claim as a matter of law was not bad faith. *J.H. France Refractories Co.*, 626 A.2d at 510; *Terletsky.* 649 A.2d at 690.

Erie's conclusion that Watchword's claim should be denied because the loss did not exceed the Policy's deductible was also reasonable. Although the fact that the API was deleted would increase the cost of reproduction or replacement and Erie's belief that it had not been deleted was erroneous, Erie's conclusion that Watchword's claim did not exceed the deductible was correct because the cost of reproduction or replacement of both the videos

and the API was $2,500 or less. N.T. Trial at 213, 221-22. Because this basis for rejecting the claim was correct, Erie's denial of the claim on this ground necessarily was reasonable.

For the foregoing reasons, we conclude that there was no evidence at trial from which the jury could find that the cost of replacing Watchword's videos and API exceeded the Policy's deductible and that Erie as a matter of law had a reasonable basis for denying Watchword's claim. Erie was therefore entitled to JNOV on both Watchword's breach of contract claim and its bad faith claim. Accordingly, we vacate the trial court's judgment against Erie and remand this case to the trial court with instructions to enter JNOV in favor of Erie. In light of our ruling that Erie is entitled to judgment in its favor on Watchword's bad faith claim, Watchword's appeal challenging the amount of the bad faith award is moot.

Judgment vacated. Case remanded with instructions to enter judgment notwithstanding the verdict in favor of Erie Insurance Exchange. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE:  1/9/2024